UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MARK MILITELLO, individually and
on behalf of all others similarly situated,

                            DECISION AND ORDER

                Plaintiff,

                            22-CV-6425DGL

      v.

FORD MOTOR COMPANY,

               Defendant.
_____

      Plaintiff Mark Militello filed the complaint in this action on October 5, 2022, on behalf of himself and a class consisting of all persons who purchased a vehicle manufactured by defendant Ford Motor Company ("Ford") from an authorized Ford dealer in New York from 2007 onwards, containing an internal water pump that suffers from an alleged design defect that can cause it to fail prematurely.

      Ford has moved, pursuant to 28 U.S.C. § 1404(a), to transfer this action to the Eastern District of Michigan. Plaintiff opposes the motion. For the reasons that follow, Ford's motion is granted.

## BACKGROUND

      The 108-page complaint alleges that plaintiff, a citizen and resident of New York, bought a 2016 Ford Explorer in March 2019 from an authorized Ford dealer in Avon, New York. Plaintiff further alleges that in or around September 2019, when his vehicle's odometer was at

about 61,300 miles, the vehicle's water pump failed due to a defect in the design of the water pump. Plaintiff alleges that he was forced to spend around $2000 in repair costs.

Because the alleged defect was in the design of the pump, it was, allegedly, not unique to plaintiff's water pump. Plaintiff claims that the defect existed, and currently exists, in thousands of vehicles manufactured by Ford incorporating its "Cyclone Engine," which contains the defective water pump.

Based on these allegations, plaintiff asserts four claims against Ford, all under New York law: (1) a claim under Gen. Bus. L. § 349 (deceptive acts or practices); (2) a claim under Gen. Bus. L. § 350 (false advertising); (3) a claim under U.C.C. § 2-314 (breach of implied warranty); (4) and fraud by omission or fraudulent concealment. Jurisdiction is premised on 28 U.S.C. § 1332(d)(2), which provides for federal jurisdiction in any class action where the amount in controversy exceeds $5,000,000, and where "any member of a class of plaintiffs is a citizen of a different state from a defendant." Plaintiff defines the class in this action as "All persons who purchased a Class Vehicle from an authorized dealer in New York for personal, family, or household purposes ... ."[1] Complaint ¶ 133. "Class Vehicle" is defined as follows: "Beginning in 2007 and through at least 2020, Ford has incorporated the Cyclone Engine, containing an Internal Water Pump with the Defect into thousands of vehicles (the 'Class Vehicles')." Complaint ¶ 3.

Ford's motion to transfer relates to an action, *Roe v. Ford Motor Co.*, No. 2:18-cv-12528, that was filed in the Eastern District of Michigan on August 14, 2018. In *Roe*–in which the

---

[1] The quoted definition is from the Class Action Allegations of the complaint. Elsewhere, the complaint states that the action is brought "on behalf of all persons in New York who purchased a Class Vehicle from an authorized Ford dealer." Complaint ¶ 4.

plaintiffs are represented by same counsel as in the case at bar–the complaint alleges the same defect in Ford's engines as in this case, in wording identical to that of the complaint here. *See Militello*, Dkt. #1 ¶ 2; *Roe*, Dkt. #42 ¶ 2.[2]  Both complaints also allege that Ford has been aware of the defect but concealed it from purchasers and the general public.

The complaint in *Roe* is brought on behalf of a "Nationwide Class" comprising "[a]ll persons or entities in the United States who purchased, leased or own a Class Vehicle," and eleven sub-classes, each consisting of class members from one of eleven states (which do not include New York).  There are fifty-five causes of action, asserting various claims under the laws of those eleven states and the federal Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.* For example, there are four claims asserted on behalf of the Arkansas sub-class, and eight claims by the California sub-class.

In support of its motion to transfer, Ford contends that the *Militello* claims easily could have been brought in the Eastern District of Michigan, and the balance of relevant factors favors transferring the action there.  Ford contends that the decision to file *Militello* in this district was motivated by forum shopping, and a desire to "avoid[ ] the supervision of the *Roe* court." Def. Mem. (Dkt. #9-1) at 1.

## DISCUSSION

### I. General Principles

Section 1404(a) of Title 28 provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or

---

[2] The operative complaint in *Roe* at this point is the Second Amended Class Action Complaint filed on June 1, 2020.  That complaint has also been submitted in this action as Exhibit B (Dkt. #9-3) to Ford's motion to transfer.

division where it might have been brought or to any district or division to which all parties have consented."

"Motions to transfer venue under 28 U.S.C. § 1404(a) lie within the broad discretion of the courts and are determined upon notions of convenience and fairness on a case-by-case basis." *WD Encore Software, LLC v. The Software MacKiev Co.*, No. 6:15-cv-6566, 2016 WL 1056628, at *2 (W.D.N.Y. Mar. 17, 2016) (quoting *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 117 (2d Cir. 1992)). "A party seeking transfer bears the burden of 'making out a strong case for transfer' through clear and convincing evidence." *Moog Inc. v. Skyryse, Inc.*, No. 22-CV-187, 2022 WL 17720965, at *10 (W.D.N.Y. Dec. 15, 2022) (quoting *N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 114 (2d Cir. 2010)).

There appears to be no dispute that the complaint in this case could have been brought in the Eastern District of Michigan. The Court's focus, then, is on whether Ford has carried its burden to show that a transfer is appropriate, considering the relevant factors. *Smolen v. Brauer*, 177 F.Supp.3d 797, 801 (W.D.N.Y. 2016).

"Among the factors to be considered in determining whether to grant a motion to transfer venue are, *inter alia*: (1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of the parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, and (7) the relative means of the parties." *New York Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 112 (2d Cir. 2010) (internal quotation omitted). Each factor need not be accorded equal weight, and no one factor is

necessarily determinative. *WD Encore Software, LLC v. The Software MacKiev Co.*, No. 15-cv-6566, 2016 WL 1056628, at *3 (W.D.N.Y. Mar. 17, 2016).

The existence of the *Roe* action in Michigan, which was filed over four years before the complaint in this case, also enters into the equation. Generally, when two actions are filed in different districts involving the same parties and subject matter, the litigation should proceed in the district where the first-filed action was brought. "The first-filed rule is a jurisprudential guide to discourage forum shopping and promote judicial economy." *Charlot v. Ecolab, Inc.*, 97 F.Supp.3d 40, 63 (E.D.N.Y. 2015). The rule does not create "an invariable mandate," but creates a rebuttable presumption in favor of proceeding in the forum where the first complaint was filed. *Employers Ins. of Wausau v. Fox Ent't Group, Inc.*, 522 F.3d 271, 275 (2d Cir. 2008).

Strictly speaking, it is questionable whether the first-filed rule applies here, since Ford does not seek dismissal of this action. The rule was devised "to prevent 'mirror lawsuits,' where two parties seeking declaratory judgements on the same dispute would rush to file in their favored forums." *Scalia v. KDE Equine, LLC*, No. 19-CV-3389, 2020 WL 4336395, at *8 (E.D.N.Y. .July 28, 2020). In such situations, it would obviously be problematic to have both suits proceed at the same time, so typically one must give way to the other. The first-filed rule often comes into play, then, in the context of a motion by the filer of one suit to stay or dismiss the other suit, in favor of the movant's action. *See, e.g.*, *Mansell and Associates, LLC v. Ritchey Metals Company, Inc.*, No. 22-cv-1169, 2023 WL 346658 (N.D.Ala. Jan. 20, 2023); *Regions Bank v. Wieder & Mastroianni, P.C.*, 170 F.Supp.2d 436 (S.D.N.Y. Nov. 7, 2001).

"The doctrine has also been applied in the context of class action lawsuits," however, including "where two potentially overlapping classes file in different courts, against the same

defendant." *Scalia*, 2020 WL 4336395, at *8 (citing *Wyler-Wittenberg v. MetLife Home Loans, Inc.*, 899 F.Supp.2d 235, 250 (E.D.N.Y. 2012)). *See also In re HSBC Bank, USA, N.A., Debit Card Overdraft Fee Litig.*, 99 F.Supp.3d 288, 309 (E.D.N.Y. 2015) ("Although it is typically invoked in non-class contexts, the first-filed rule has been applied to class action suits filed by different plaintiff classes against the same defendant") (quoting *Bukhari v. Deloitte & Touche LLP*, No. 12 CIV. 4290, 2012 WL 5904815, at *3 (S.D.N.Y. Nov. 26, 2012)). *Cf. Shimon v. Equifax Info. Servs. LLC*, No. 18-cv-2959, 2018 WL 4906245, at *2 (E.D.N.Y. Oct. 9, 2018) (expressing skepticism that the first-filed rule is generally appropriate in the context of similar putative class actions, but noting that using the to stay or dismiss a concurrently pending class action "would undermine other efficiency-maximizing Congressional directives[, which] include *transfers to a more convenient forum under 28 U.S.C. § 1404(a)*") (emphasis added).

After considering the relevant factors, I conclude that Ford has demonstrated that transfer of this action to the Eastern District of Michigan is appropriate. First, while I do not agree with Ford that plaintiff's choice of forum in this case should be given *no* weight, neither is it entitled to great weight. Were it otherwise, few if any cases would ever be transferred, since a transfer necessarily means moving the case out of the district in which it was brought. *See Enhancedcare, Inc. v. Attentive Health & Wellness, LLC*, No. 20-CV-6171, 2021 WL 388763, at *10 (W.D. N.Y. Feb. 4, 2021) (stating that "As it does in all cases where a party is seeking transfer based on the first-filed rule, the first factor favors retention," but granting defendants' motion to transfer to district where earlier-filed suit was brought).

There is obviously some nexus between the Western District of New York and the underlying facts of this case. Plaintiff is a resident of this district, and his vehicle was purchased

and allegedly suffered a water pump failure here. Nevertheless, the fact that his attorneys filed a very similar class action Michigan in 2018, involving plaintiffs from eleven different states, suggests that this case could just as easily have been brought in Michigan. While plaintiff may not literally have engaged in "forum shopping," in the sense of bringing a lawsuit for strategic reasons in a district with only a tenuous connection to the facts, I do note that prior to the filing of the *Militello* complaint in this district, the Michigan court had issued several decisions dismissing many of the claims brought by the *Roe* plaintiffs. *See Roe* Dkt. #31, #61. That fact lends some credence to Ford's assertion that plaintiff is motivated less by the convenience or appropriateness of litigating in this forum than with a desire to avoid litigating this case before the same judge as *Roe*. *See Tenzyk v. American Honda Motor Co.*, No. 18-CV-6121, 2019 WL 6034859, at *3 (E.D.N.Y. Nov. 14, 2019) (stating that fact that California court had dismissed previously-filed similar action was "not a reason to maintain this action here," since "doing so would countenance ... 'forum shopping'"); *Johnson v. New York Life Ins. Co.*, No. 12-11026, 2013 WL 1003432, at *3 (D.Mass. Mar. 14, 2013) ("[W]here, as here, the same counsel has filed class actions asserting the same federal claim in two different districts, and the second claim was filed after the federal claim was dismissed in the first-filed case, the usual weight given to the plaintiffs' choice of forum is not justified. Rather, to give it such weight would abet a form of forum shopping that should not be encouraged").

     Unsurprisingly, the parties have sharply different views about the remaining factors. Ford asserts that most of the witnesses and evidence are located in Michigan, and that the most relevant events relating to the design of the water pump and Ford's alleged concealment of the defect took place in Michigan. Plaintiff responds that Ford has grossly overstated the alleged

inconvenience to it of litigating this action in New York, and that the availability of remote deposition and electronic discovery greatly mitigates the burden on Ford and its witnesses.

The Court finds that on the whole, the remaining factors, which generally relate to matters of convenience and the burden on the parties of proceeding in one forum or the other, do not tilt strongly one way or the other.  Ford is correct that the operative facts are centered more in Michigan than in New York.  Although plaintiff's vehicle was purchased and suffered a water pump failure in New York, his claims do not relate so much to the facts of that particular breakdown, but to the design of the pump and Ford's alleged knowledge that the design was flawed.  As Ford notes, those matters mostly concern Ford's operations in Michigan, where presumably most of the relevant witnesses and sources of proof are located.

At the same time, however, Ford, a multinational corporation that does business throughout the country, obviously is less inconvenienced by litigating outside Michigan than an individual New York resident would be by litigating elsewhere.  And plaintiff did choose a New York forum, although as explained above, the weight accorded to that factor is diminished somewhat under the circumstances of this case.

What decisively tips the balance in favor of transfer, however, is the earlier-filed *Roe* action in Michigan.  As demonstrated by a comparison of the complaints in *Militello* and *Roe*, the allegations concerning the design of the water pump, Ford's knowledge that numerous purchasers had complained of water pump failures in Ford's vehicles, and Ford's concealment of the problem are very similar and in many places identical in both actions.  *See* Def. Ex. C (Dkt. #9-4).  Militello's claims, though brought under New York law, are also similar to the various state-law claims in *Roe*.  The only real difference is that Militello lives in New York, and the *Roe*

plaintiffs are from other states, but in the context of a design defect case involving vehicles sold nationwide, that is a minor difference at most. *See Tenzyk*, 2019 WL 6034859, at *4 (stating with respect to first-filed product liability action brought in California by residents of Tennessee, Wisconsin and California, and second-filed action brought in New York by New York residents, that "[t]he facts, issues, parties (Honda and its consumers), and attorneys are the same in both actions").

The *Roe* court is thus undoubtedly well familiar with the relevant facts and legal issues presented in this case. As stated by District Judge Laurie J. Michelson in an Opinion and Order entered on March 17, 2020, deciding Ford's motion to dismiss in *Roe* meant working through the 282-page complaint that Judge Michelson aptly described as "a small book." *Roe* Dkt. #40. The court has also overseen discovery, which as explained by Ford's lead trial attorney in *Roe*, as of early February of this year had yielded over 113,000 pages of documents produced by Ford. *See* Decl. of Roger P. Meyers (Dkt. #9-6). While some of the *Roe* court's decisions may not have been to the plaintiffs' liking, that court's familiarity with the background and relevant issues would make it far more efficient to litigate this action in the Eastern District of Michigan than here. Transfer will also help avoid duplicative litigation and the risk of inconsistent rulings and factual findings. *See Enhancedcare*, 2021 WL 388763, at *10 (stating that aside from the plaintiff's choice of forum, "most of the remaining [balance of convenience] factors appear to be neutral," but that "the threat of duplicative litigation warrants application of the first-filed rule," and transferring action to Alabama, where earlier suit was pending); *Baduria v. Sealift Holdings, Inc.*, 451 F.Supp.3d 248, 256 (E.D.N.Y. 2020) (stating that where most of the § 1404 factors were "largely neutral," the factors of trial efficiency and interest of justice "overwhelmingly

compel[led] transfer" to Louisiana, given the extensive history of litigation of a related case there).

Finally, I note that plaintiff asserts that Ford's motion to transfer is simply a subterfuge, and that if the case were transferred, Ford will seek to dismiss it on the ground that the *Roe* litigation is too far advanced to disrupt it by the addition of the plaintiff (or plaintiffs) and claims in *Militello*. That argument is misplaced. All this Court is doing is transferring the action to the Eastern District of Michigan. Once that is done, how this case should proceed will be up to the *Roe* court. Any issues concerning consolidation with *Roe* or similar matters can be addressed by that court, following transfer.

## CONCLUSION

Defendant Ford Motor Company's motion to transfer (Dkt. #9) is granted, and this action is transferred to the United States District Court for the Eastern District of Michigan, pursuant to 28 U.S.C. § 1404(a).

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
       June 6, 2023.